Mr. Collier, you have reserved two minutes for rebuttal, so that gives you eight minutes to begin. I did so, Your Honor, and may it please the Court. The district court's order in this case, applying the Unger abstention to what we think of as a kind of bog-standard, mine-run civil rights case, was mistaken for at least three reasons. First, is it — I'm sorry, before you even get into — isn't it that the state court proceedings are now over, correct? That's how I read it. That's why I sent in that 28J letter. Right. And the district court abstained because of the pendency of the state court proceedings, right? It did. And so shouldn't we just send it back right now? Well, certainly you would have to reverse it before you send it back. Well, or is it — is the Unger abstention issue moot now that the state court proceedings have been completed? No question it's moot at this point. No, no, no, no, but the Unger is about at the time of the filing, right? What do you mean by at the time of the filing? It doesn't turn — you don't get to do what the folks in the first argument did here today, which is say at oral argument, but this is now no longer a live issue. I mean, it turns on — the Unger abstention turns on at the time that you brought the action. The federal court — There was a state case pending, right? Well, actually, the state case — the criminal case came after the civil rights case had been started in federal court. It came second. But the important thing is that when the complaint was amended, there was no allegation of a Unger type saying that the state court probation violation hearing couldn't go ahead for one reason or another. I mean, think about Unger. It was a facial attack on a California statute. No, no, I get all that. Yeah. I mean, I'm reading from Gristino, which is our case from just earlier this year. Okay. The Unger abstention issue is evaluated at the time of filing. It is not continuously reevaluated throughout the pendency of a federal proceeding. So it seems to me that, you know, what should happen is you go back — you could go back to the district court, I suppose, and say we want to start again, but it's not clear to me that that is a magic bullet that gets you out of Unger abstention on appeal. Well, my point is that, first, the federal court case was filed before the state court was even pending. State court action was even — the state court criminal proceeding was even pending. So at that point, there was no possibility that Unger could apply. The application of Unger only became possible once the State of Connecticut charged Torres with probation violence. Right. But that's not, I mean, the sequence you're describing. I mean, you're correct. When the federal action was filed, there was no state proceeding. And so what I don't understand is why the argument isn't being made that for that reason, the Unger abstention decision below was incorrect. Because although the time — by the time of the district court's decision, there was a state proceeding, we judge Unger at the time the federal action is filed. And there was no ongoing state proceeding when this — the federal action was filed. So I don't understand why you're not arguing that the Unger decision was incorrect on that basis. Okay. Here's why I didn't make that argument. And it's this reason. That if you look at — and I don't remember if the case is Hicks against Miranda, but it was one of the early post-Miranda cases. And basically the Supreme Court said, if there are no proceedings of substance, we don't consider that the federal action has started yet. So that if you know that someone's about to go into state court with a criminal act, but you run over to the federal courthouse a day ahead of time, well, that's still subject to Unger. Here, you're still at the pleading stages. And my concern was that this Court might say, you know what? You're still at the pleading stages. Unger doesn't really have the same force and effect as it would later on. But you're absolutely right, Judge Lee, absolutely right about it. Then in the usual case, this case was filed — was first filed, so Unger doesn't come into play from this second event. So if we were to refer the abstention, what would happen next? Would you go back to the district court and say, now that the state case is pending, we want to reinstate our claims? Well, the district — one of the — It's a practical matter. I'm trying to — No, no. Why we need to resolve this, if the reason for the abstention was the state court proceedings, and those proceedings are now over. That's a practical matter. That's right. It's a practical matter. Torres — and he now, unfortunately, no longer has a lawyer representing him in the district court — but Torres, or whoever is appointed to represent him, would go back to the district court and say, the criminal proceeding is over. Certification has been denied by the Supreme Court of Connecticut. There's no longer any basis for any of this. The stay should be dissolved. And to the extent that the equitable claims were dismissed, to the extent there's still some equitable claim, those should be reinserted back into the case. And that's exactly right. And that's exactly right. I was trying to look at the larger picture about this, which is that it doesn't apply for a whole bunch of other reasons as well, not the least of which is the state court criminal proceeding had concluded. And even though the district court seemed to think there was some basis for the equitable claims to somehow intermix — But the state proceeding had not concluded because appeals were still taking place. It would have been different, Your Honor, if Torres had raised some of these issues and then brought them up on appeal. Why does that make — I mean, but there was an appeal. Regardless of whether the issues changed, the proceeding — and with regard to Younger, we held that it's ongoing if there's an appeal. It's ongoing only when the issues can be raised in the appeal. And I think that's a distinction the Court might have kind of glided over a little  Do we have cases saying it's considered an ongoing proceeding only when — what is the — Well, the case that my friend refers to in her brief is Weiss. And Weiss was someone who lost in a criminal proceeding, and then while the state court case was under appeal, ends up running over to the Federal courthouse. And the district court properly said, and this Court did as well, no, you can't do that because you've got an ongoing proceeding at which you can raise these issues. My point is that Torres had no opportunity to raise those issues in the criminal proceeding because that was over before he was told he had to go there. And it was foreclosed to him as a practical matter on appeal. It was an option that, in fact, did not exist for him, even though the district court seemed to think that. That was a point I wanted to make, and that is that the district court's application of Younger almost appears to be what we would think of as a kind of a mandatory claims joinder rule, saying, well, if you've got a case over here in state court, even though it's a civil rights case to recover damages and so forth based on the way you've been treated, as long as there's some other case going on in state court, you have to bring those claims there. And the problem with that is multifold. Not only is there no such rule like that in Younger, but more to the point, there was no opportunity to bring them, first because the trial had been over, and number two, because there was no way to bring the sorts of civil rights claims he had in his civil — in the criminal prosecution against him. He wasn't making a facial attack. And that's the big difference between this case and the Younger-type cases, which tend to be facial attacks on statutes or procedures that say, you can't do this. Torres never questioned that he could be charged in state court with probation violation. He argued that he didn't violate probation, for sure, but there was no contention in that court that he couldn't be charged for that. Anything else? Well, you've got two minutes for rebuttal. So let's hear what Ms. Graham has to say. Thank you. May it please the Court, Assistant Attorney General Zenobia Graham-Days, here on behalf of the State Defendants. We take the position that there was an ongoing proceeding at the time that this Federal action commenced. And that's because the appeal, the appellate process hadn't run yet? Well, we're taking the position that the criminal proceeding is, in fact, ongoing until Mr. Torres completes every aspect of the sentence. And part of the reason we say that is because — Well, I'm not asking you to bring any actions for, like, 30 years until the probation is over. I mean, is that — Well, no, that's very broad. We're not saying that. What we're saying is that Connecticut General Statute 53A-30, subsection C, gives the sentencing court the authority to modify probation at any time. It could enlarge —  So he's not in violation of probation, but he's on probation, and he's got 30 years. He's not breaking any laws. He's complying with everything. In your mind, there is an ongoing proceeding, and so he cannot bring any action in Federal court until those 30 years are up? No. Okay. So what's the difference between — The difference between your example and what happened here is Mr. Torres is actually attacking the order of probation that was entered by the sentencing court. If we look at the record, specifically A-42, we see that — But that's — that order says for 30 years, these are your conditions. So how is that — the fact that what he is attacking is that order, your view is, because the order — effectively, anything involving that order is an ongoing proceeding, but he was not attacking that — at least he wasn't raising a — he wasn't doing anything in a State proceeding at the time he filed his Federal claim. No, but what we're saying is that the underlying purpose of Younger is to avoid the conflict. It is to avoid the — the friction between the State and the Federal government. And what Mr. Torres is doing here is saying, I shouldn't have to be at the January Center. And part of the reason why he was placed at the January Center is because the order of probation said that he was not only — Is he saying more than that, though? Is he challenging specific aspects of his — what's going on while he's at the January Center? He's challenging the January Center, saying that he shouldn't have been placed there in the first place. He's saying that it is equivalent to prison. Right. But he's — is he also bringing other challenges? He has a variety of challenges under the Eighth Amendment and the Fourteenth Amendment. But as it relates to the State defendants, his position was he should not have been placed at the January Center, and that by being placed at the January Center, it infringed on his constitutional rights because the January Center was equivalent to prison. And we're taking the position that when the sentencing court ordered him to undergo sex offender treatment, and when the sentencing court ordered him to undergo intensive probation supervision, that order is what's being challenged. And because that is what is being challenged, we're saying to Mr. Torres, the federal court is not where you address that. You can file a sentence modification to have that portion of the order of probation addressed. The reason we say it's ongoing is because if you look at page A42, that's the order of probation. It has a DACA number. He has a damages claim, though, right? I mean, he's seeking damages because he shouldn't have been there is the  He shouldn't have been put in — you know, that it was, in essence, additional incarceration. He is seeking damages. And in response to the damages, we're saying — we're asking this court to take the step that's needed, and that step is to address qualified immunity at the earliest possible stage. And the reason — You started off by younger abstention, and now we're moving on to qualified immunity. And — but one of my — is it your position that there is still an ongoing criminal proceeding and that younger continues to be — younger abstention continues to be appropriate? If Mr. Torres is, in fact, attempting to challenge the order of probation, if Mr. Torres is trying to get the district court to serve as an appellate forum for the sentencing court, we're saying absolutely, because what we're looking at is friction. That's a different argument than the court should abstain while the criminal proceedings are pending. Part of the reason — I guess I'm trying to get back — I don't know if you answered my question. Is it your argument that the criminal proceedings are still pending, which I guess is like Judge Lee's question, and those — it will be pending for 30 years? If — if Mr. Torres is attempting to attack the order of probation, which is what he's doing here, we would say it is ongoing until he completes the first 35 years of probation. Until he completes — That's not what Judge Nagala relied on, right? Judge Nagala basically invoked younger to say we're going to abstain because he's simultaneously facing state charges for violations of his probation, correct? Yes, that is correct. But the issue is that opposing counsel is now attempting to challenge the district court's assessment that this was, in fact, ongoing. That's his argument. His argument is, in part, that younger should not have been applied because — Well, I think the response to that is, well, you look at the time of filing and his point was — Mr. Cole's point was that at the time of filing, there was no — there were no state charges pending. But your argument is just totally different. Yours is that there is no — that younger applies for the duration of a term of supervisory release or probation. If — Am I right about that? If an individual is attempting to attack the order that was entered by the sentencing court, that's why it's not as broad as the hypothetical that Judge Lee proposed. And the reason is — It's not a hypothetical. That's this case. Well, this — You're saying that — you keep saying if he is challenging the order of probation, he is. That's what you said. Your view is he is challenging that order. And so if he is challenging that order — this is how you framed it — then, yes, there is an ongoing proceeding until that order is fulfilled in 30 years. So that's not a hypothetical. That is —  As you have framed it, this case. That's correct. Your view is he cannot challenge — he cannot bring any action in federal court regarding anything relating to that order of probation for 30 years. Thirty-five years, which is the period of time. And if he wants to challenge it, he has to go back to the sentencing court. We want the sentencing court to address it. And part of the reason why we're taking this position is that if you look — Well, he has to go back to the sentencing court to ask for a revision of the order, for a revision of the terms. But does he have to go back to the sentencing court if all he is doing is seeking money damages? He has to go — if he is asking for the court to assess whether or not placement at the January center is constitutional, we're saying that has to be addressed by the sentencing court. Because the sentencing court has authority — That was unconstitutional. He has to go back and say, what you did to me is unconstitutional. He can't seek relief in federal court. He has to have that court make a determination as to whether or not it's unconstitutional. According to what? What's the authority for that? We're looking at Imperale. Imperale is a similar situation where the State of Connecticut, the Supreme Court, assessed the January center and made a determination that the placement at the January center was, in fact, constitutional. And so that is — that's also the reason why we are not only looking at the court's application of Younger, because Younger — I don't think the district court went into the analysis of all of these issues. The district court says there's a criminal case pending, and at the time, the appeals were still pending. Therefore, I'm going to stay these proceedings. Now that the appeals are over, the Supreme Court of Connecticut denied certification, should we just send it back to her and let her assess what the circumstances are, and you can make all these other arguments that the district court didn't address, including whether some of the claims — he's no longer in the January center, right? That's correct. So some of the claims for equitable relief might be moved? We're asking the court to decide here. And part of the — You're not answering my question. Is it your argument that those equitable claims relating to the stay at the January center, conditions at the January center, are moved? The claims of declaratory and injunctive relief, yes. We are saying that they're moved. But shouldn't we just let the district court consider that in the first instance? Yes. We don't know if there's a claim for prospective relief, whether in the next 35 years things should change. All of that prospective relief, we would argue that it would be very speculative and extremely remote. Part of the concern we have is that the district court in Sargent v. Emmons took a look at Younger and made some determinations as to what ongoing meant, and looked at the date that the complaint was filed and compared when the other proceeding started. And even though the other proceeding started after the complaint was filed, the court still applied Younger. But when Sargent v. Emmons came before this court, this court affirmed on alternative grounds. But what did not happen was the analysis applied by the court, the Younger analysis, was not rejected. This court did not reject that analysis. And so what we're saying is, not only did Judge Nicala get it right, but... Can I just ask you, I'm sorry, the Christina case that we mentioned earlier, are you familiar with that? Yes, I am. Okay. But that's, and it came out this year, I don't know what the timing was in terms of when the briefing, if it came out before or after your briefing in this case. Does that... Change anything? Yes. Why does that not change anything in the interview? Because this is a significant state interest. Part of the problem here is that we do not want individuals to believe that they can go to the district court to revise, correct, amend, and or alter the terms that were entered by the sentencing court by way of the order of probation. We're saying that the sentencing court identified special conditions that Mr. Torres was required to adhere to. My clients interpreted that and made the determination that the best way to not only give the plaintiff sex treatment, but also put him in an environment that would allow the office of probation to still have intensive supervision over him, placement at the January Senate was appropriate. And so our argument is we're trying to avoid the conflict between the state and the federal court. We think that based on the actual claim that was asserted by Mr. Torres, the district court got it right. But that only applies to the claims for declaratory relief, as well as injunctive relief. There's still the claims for monetary damages that were staged. And so as it relates to that, you know, we could say to the court, we can send it back. But what's lost in that is qualified immunity. And qualified immunity should be addressed. Why is that lost? It seems to me you could make all these arguments. If the thing goes back now, if we were to affirm Judge Nagala and say at the time of filing, there was younger plies, and so therefore she didn't do anything wrong. But changed circumstances mean that this case can now proceed on a different footing. You might have lots of defenses. Qualified immunity might be just one of them. There might be lots of others that are available. But I'm not sure why the younger extension doctrine would still apply. Well, younger applies to declaratory relief and injunctive relief. It doesn't apply to the monetary damages. What we're saying is- That claim was stayed, right? So what happens now? Now that it was stayed pending the state court proceedings, the state court proceedings are over. Can he start up the claim for damages again? Should the stay be lifted? I think that that is something that only Mr. Torres and his counsel can address. For me, it would just be speculating. Part of what we're saying is- Wait, isn't the district court, though? I mean, the district court, depending, I guess, on how we rule, the district court decided to stay the monetary damages claim. And so presumably, I guess that is out there. Well, the district court does have the discretion to do what she did. We're not saying that it was wrong in any way. But what we are saying is that part of the arguments that are made as it relates to qualified immunity is to address it at the earliest possible stage. And so here we are. I mean, we also- Do you want us to address it as to the damages claims as well, even though the damages claims have been stayed? Well, yes. And part of it is we do not want anyone- Do you want to do that if the damages claims have been stayed? We don't want anyone to believe that we waived our argument as it relates to our affirmative defense. We want to assert it at every possible stage because we don't want the perception that it's lost. And part of the problem is by continuing the litigation, it does the one thing that qualified immunity is supposed to avoid, which is to have ongoing litigation under circumstances that really don't merit it. We would argue that the law is not clearly established. There's nothing that put these individual defendants on notice. So you can make all these arguments before Judge Nicala, right? I did. And opposing counsel never responded. And so it's- I mean, it seems to me you're not harmed. I mean, you get basically just to say, okay, I want to make those same arguments again that were debriefed. We are harmed in that we're now in a holding pattern, a holding pattern that's beholden to the plaintiff. I mean, because in essence- Aren't you in a holding pattern because you asked for a younger abstention? We do not believe that's why we're in a holding pattern because the younger abstention doctrine did, in fact, dismiss the claims for declaratory and injunctive relief. So that's not in a holding pattern. The only thing that's in a holding pattern right now are the claims for monetary damages because those were the claims that were, in fact, saved. And as it relates to- You want us to decide it now so we get your point. Thank you. I would- I recognize that I have exceeded my time. If there are additional questions, I'm willing to answer them. If not, I would just like to rely on my brief. All right. Thank you. Thank you. Mr. McCall, you have two minutes for rebuttal. Judge Chin, to answer you, I think you're probably right that most of the equitable claims may be moot, but that's a matter for the district court to decide on remand when the case goes back. Right. I guess here's my question to you, Mr. Call. If we affirm Judge Nagala and say that at the time that she made this ruling, at the time that the case began, that the younger extension was appropriate, so what do you do then after that? You've got a monetary damages claim and the possibility, I guess, of amending to add additional injunctive or other declaratory relief because the state proceeding is now over. Isn't that what you're doing? I think that's correct, although I do disagree with you that in the first instance applying younger was correct. No, I understand that. I'm saying if we were to say that, then the next step for you would be to just go back to Judge Nagala, get the damages claim going again. There might be lots of defenses, including qualified immunity that you now have to deal with and that she'd have to entertain. You might have an opportunity to amend your pleading to include some of the previously subject to the younger extension. Isn't that – am I missing something? I think you're right on that. It wouldn't technically be an amended pleading. It would be a supplemental pleading that would cover events that have occurred since then. Sure, and you're right, it would kind of put the case back to where it belongs. Qualified immunity, as I pointed out in the reply brief, isn't here because there's no cross appeal that was taken, and therefore that issue is gone for the purpose of this appeal. But not below. But not below. No, of course not. Of course. But it's just not here. It's not an alternative ground to affirm. And the other point is that if you go through the complaint – and I have to take my hat off to Mark Greger, who wrote it for Torres, and, again, another volunteer lawyer who did this – it's got one example after another of deprivation. You have refusal to let someone use the law library, not allow someone to go seek housing, what have you. There are a lot of these little items that have to do with his claim that have to do with the way he was treated, not the way the probation order stands. So it's an as-applied claim as opposed to a facial claim. And I think that's something we have to think about in the same way as we look at statutes that way. It's always a pleasure. All right. Thank you both. We will reserve decision.